UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
KELVIN JAMES, MARY SIMMONS, and JODI   :      13 Civ. 2801 (DLC)
FOSTER, on behalf of themselves and    :
others similarly situated,             :
                                       :
                   Plaintiffs,         :      OPINION AND ORDER
                                       :
         -v-                           :
                                       :
PENGUIN GROUP (USA) INC. and AUTHOR    :
SOLUTIONS,                             :
                   Defendants.         :
                                       :
-------------------------------------- X

APPEARANCES

For the Plaintiffs:

Oren Giskan, O. Iliana Konidaris, and Raymond Audain
Giskan Solotaroff Anderson & Stewart LLP
11 Broadway, Suite 2150
New York, New York 10004


For the Defendants:

Jonathan M. Herman, Christopher G. Karagheuzoff, and Jonathan
Montcalm
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York 10019


DENISE COTE, District Judge:

    Kelvin James ("James"), Mary Simmons ("Simmons"), and Jodi

Foster ("Foster") bring this putative class action on behalf of

all others similarly situated ("Class") against Penguin Group

1

(USA) Inc. ("Penguin"), and Author Solutions, a Penguin company ("Author Solutions"), alleging breach of contract, unjust enrichment, and violations of three state statutes: <u>Cal. Bus. & Prof. Code</u> §§ 17200, 17500, <u>N.Y. Gen. Bus. L.</u> § 349, and <u>Colo. Rev. Stat.</u> § 6-1-105(1)(u).  Defendants have moved to dismiss Penguin as a defendant and, with respect to Author Solutions, all but the contract claims.  For the following reasons, all claims against Penguin are dismissed.  The motion to dismiss the unjust enrichment and statutory claims against Author Solutions is largely denied.

BACKGROUND

The following facts are taken from the plaintiffs' Second Amended Complaint, which is the operative complaint in this case ("SAC").  Author Solutions provides publishing and marketing services to individuals who wish to self-publish their books. Since it launched in 2007, it has worked with 170,000 authors to publish over 200,000 book titles.

The named plaintiffs purchased publishing and marketing services from Author Solutions.  They allege, on behalf of themselves and the Class, that Author Solutions engages in fraudulent business activities.  Author Solutions does not provide the services it promises to provide, and then pressures

authors into purchasing "more, equally bogus" editing, marketing, and publishing services.  Author Solutions refuses to fix errors in manuscripts, implants new errors, and delays publication until authors purchase more services.  Furthermore, Author Solutions does not pay authors their earned royalties or provide accurate sales statements.

The plaintiffs allege that at least 50 authors have publicized their complaints about Author Solutions on social media, blogs, and the Internet generally.  Additionally, approximately 100 authors have contacted plaintiffs' counsel complaining of the practices identified above.

The three named plaintiffs experienced very similar treatment by Author Solutions.  James is a resident of New York. In April 2009, James purchased a "Select" package for $1,000 from Author Solutions for publication of his first book.  The book was ultimately published with errors that were not in James's final manuscript.  James nevertheless decided to publish a second book with Author Solutions.  He was reassured by an employee of Author Solutions that its services had improved and that he would not encounter the same setbacks that he had experienced in publishing his first book.

In August 2010, James purchased a "Premier" package for his second book.  The Premier package includes a service called

Editorial Evaluation, which is marketed by Author Solutions as a "diagnostic tool" to assist authors in improving their manuscripts.  The Editorial Evaluation also determines whether the author will receive an "Editor's Choice" designation.

When James submitted his manuscript for an Editorial Evaluation, he received the following boilerplate response:

> Your manuscript has many of the basic elements required in today's publishing marketplace, but it is the opinion of the Editorial Board that the Editor's Choice designation cannot be awarded without additional revision.

The Editorial Evaluation recommended that James purchase proofreading and editorial services.

After James failed to purchase the recommended services for revising his manuscript, he began to suffer delays in the publication process.  When the book was eventually published, it included multiple errors that were not in the manuscript he submitted to the publisher.

The second named plaintiff, Simmons, is a resident of Colorado.  In May 2011, Simmons purchased a "Bookstore Premier Pro" package from Author Solutions for $1,079.50.  This package included an Editorial Evaluation.  When Simmons submitted her manuscript for an Editorial Evaluation, she received the following response:

> Your manuscript has many of the basic elements

4

> required in today's publishing marketplace, but it is
> the opinion of the Editorial Board that the Editor's
> Choice designation cannot be awarded without
> additional revision.  Editor's Choice is still a
> possibility if the editorial services recommended in
> the Editorial Rx Referral in your Editorial Evaluation
> are completed satisfactorily.

Unlike James, Simmons purchased services recommended in the

Editorial Evaluation.  In May 2012, she purchased a

Developmental Edit for $4,659.78.  In October 2012, she

purchased a Proofreading Package for $1,049.  In December 2012,

Simmons purchased a Marketing Package for $13,600.  She alleges

that all products fell short of their promised level of

services.

The third named plaintiff, Foster, is a resident of

California.  In May 2010, Foster purchased a "Bookstore Premier

Pro" package for $1,499 from Author Solutions.  In August 2010,

Foster submitted her manuscript for Editorial Evaluation.

Foster received the following response:

> Your manuscript has many of the basic elements
> required in today's publishing marketplace, but it is
> the opinion of the Editorial Board that the Editor's
> Choice designation cannot be awarded without
> additional revision.  Editor's Choice is still a
> possibility if the editorial services recommended in
> the Editorial Rx Referral in your Editorial Evaluation
> are completed satisfactorily.

The Editorial Evaluation encouraged Foster to purchase a

Developmental Edit, making various representations regarding the

quality of services that the Developmental Edit would provide and stating that purchase of the Developmental Edit was required to be considered for Editor's Choice.  Foster then received a form email from Kathi Wittkamper, stating that her book had been flagged as a possible Editor's Choice title.  In this email and in conversations, Wittkamper made representations regarding the quality of services that the Developmental Edit would provide. In March 2011, relying on these representations, Foster purchased the Developmental Edit for $4,196.25.

The Developmental Edit was completed in April 2011.  In May 2011, Foster was notified that her book had received the Editor's Choice designation.  Her published book, however, contained several publisher errors.

In June 2011, Foster was informed that she had received the "Rising Star" designation.  Author Solutions informed Foster, however, that if she did not purchase a set of recommended marketing services, her designation would be removed.  Foster purchased a Marketing Package for $3,999.  At some later time, however, this amount was refunded.

Each of the three named plaintiffs alleges that the Editorial Evaluation that he or she received contained false statements.  Each asserts that no editorial board had actually reviewed the manuscript or made an assessment that revisions to

the manuscripts were necessary.  In addition, each named
plaintiff asserts that Author Solutions failed to pay all of the
royalties that were due and failed to provide an accurate
statement of sales.

     As the experiences of these three authors illustrate, the
SAC alleges that Author Solutions is structured to push authors
to purchase additional products.  When authors first contact
Author Solutions, a sales representative makes false statements
about the royalty rate to encourage individuals to purchase
publication packages.  If an author purchases a package from
Author Solutions, he is then assigned a "Check-In Coordinator"
or "Product Services Associate."  These associates, however, are
instructed not to correct errors in manuscripts.  While authors
are given an opportunity to correct 50 errors at no cost, the
errors remain uncorrected and new errors created by the
publisher appear.  When authors call to complain, they
experience difficulty reaching their Check-In Coordinator or
Product Services Associate; when they finally do reach a
representative, they are told the errors can be corrected only
for a fee.  Meanwhile, the authors experience delays in the
publication of their manuscripts, and are unable to reach their
editors.  The authors, however, receive many calls from sales
representatives, who have revenue targets of $5,000 per author.

The underpayment of royalties is a regular practice at Author Solutions.  By contract, authors are to receive 50% of their sales receipts as royalties.  Authors receive contradictory sales statements or are told that they have made no sales.  Correcting these figures is a time-consuming process. In short, Author Solutions knows that it is not paying its authors the promised royalties, either because it lacks a proper accounting system or because it willfully fails to honor its contracts.

The SAC includes other allegations that Author Solutions is engaging in deceit.  For example, Author Solutions has created social media personas to entice authors to use its services.  It has developed websites that resemble independent advice sites on self-publishing (e.g., chooseyourpublisher.com) to direct readers to itself.  Additionally, it maintains "imprints" -- essentially sub-brands -- that offer identical services, creating the impression that authors have more self-publishing options than is actually the case.

In or about July 2012, Penguin acquired Author Solutions, publicly stating a desire for the latter's "skills in customer acquisition and data analytics."  In July 2013, the president of Penguin International based in Delhi became the CEO of Author Solutions.

8

On April 24, 2013, the plaintiffs filed a complaint naming Penguin and Author Solutions as defendants.  In response to a motion to dismiss, on July 19 plaintiffs filed an amended complaint.  Defendants again moved to dismiss.  In an Order of September 5, plaintiffs were given one final opportunity to amend their pleadings.

On September 27, plaintiffs filed the SAC.  The SAC includes eight claims.  The first alleges breach of contract for failure to pay royalties at the promised rate.  The second alleges unjust enrichment for retention of royalties and for receipt of money without providing promised services.  The third, fourth, fifth, and sixth claims allege consumer fraud and false advertising under California law.  Cal. Bus. & Prof. Code §§ 17200, 17500.  The seventh claim alleges consumer deception under New York law.  N.Y. Gen. Bus. L. § 349.  The eighth claim alleges fraudulent omissions under Colorado law.  Colo. Rev. Stat. § 6-1-105(1)(u).

Plaintiffs bring this action on behalf of the class of those similarly situated "who have purchased Publishing Packages and/or Services" from the defendants, who have not been paid royalties, or "whose Services have not been fulfilled since April 26, 2007."  Plaintiffs also bring this action on behalf of three sub-classes residing in three states:

9

- All persons residing in California who purchased a publishing package or services from defendants who have not been paid royalties or whose services have not been fulfilled since April 26, 2009.
- All persons residing in New York who purchased a publishing package or services from defendants who have not been paid royalties or whose services have not been fulfilled since April 26, 2010.
- All persons residing in Colorado who purchased a publishing package or services from defendants who have not been paid royalties or whose services have not been fulfilled since September 27, 2010.

On November 1, defendants moved to dismiss Penguin as a defendant entirely and to dismiss all but the contract claims against Author Solutions.  The motion was fully submitted as of December 18.


DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

The claims raised in the SAC require application of both

the ordinary and heightened pleading standards in the Federal
Rules of Civil Procedure.  The ordinary pleading standard is set
forth in Rule 8(a), Fed.R.Civ.P.  The plaintiff must make "a
short and plain statement of the claim showing that the pleader
is entitled to relief".  Under Rule 8(a), to survive a motion to
dismiss, "a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible
on its face."  Iqbal, 556 U.S. at 678 (citation omitted).
Applying this plausibility standard is "a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."  Id. at 679.  Relevant
considerations include "the full factual picture presented by
the complaint, the particular cause of action and its elements,
and the existence of alternative explanations so obvious that
they render plaintiff's inferences unreasonable."  L-7 Designs,
Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

The heightened pleading standard is set forth in Rule 9(b),
Fed.R.Civ.P.  For claims alleging fraud, the plaintiffs must
"state with particularity the circumstances constituting fraud
or mistake."  In order to comply with Rule 9(b), a complaint
must: "(1) specify the statements that the plaintiff contends
were fraudulent, (2) identify the speaker, (3) state where and
when the statements were made, and (4) explain why the

11

statements were fraudulent." Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 197-98 (2d Cir. 2013) (citation omitted). Under Rule 9(b) "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Nonetheless, "plaintiff[s] must allege facts that give rise to a strong inference of fraudulent intent." Nakahata, 723 F.3d at 198 (citation omitted); see also Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995). The inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006) (citation omitted).

I. Penguin

Defendants contend that all claims against Penguin, which is the parent company of Author Solutions, should be dismissed. "It is a general principle of corporate law . . . that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998).

12

> But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, <u>inter alia</u>, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf.

<u>Id.</u> at 62.

Penguin is dismissed as a defendant in this action.  The activities at issue here were undertaken by Author Solutions, a subsidiary of Penguin.  Plaintiffs concede that they are not attempting to pierce the corporate veil in order to hold Penguin liable for Author Solutions' actions.  Accordingly, under basic corporate law principles, Penguin cannot be held liable for the alleged misconduct of Author Solutions.

In opposing this motion, plaintiffs argue that "Penguin itself has participated in or promoted [Author Solutions'] deceptive conduct."  Penguin did not acquire Author Solutions, however, until July 2012, which is after virtually all of the conduct alleged with any specificity in the SAC.  Since the SAC does not adequately plead that Penguin engaged in any of the wrongful conduct and since plaintiffs are making no attempt to pierce the corporate veil, all claims against Penguin are dismissed.

II. Count Two: Unjust Enrichment

Author Solutions has moved to dismiss the SAC's unjust enrichment claim.  The parties have not addressed the choice-of-law issues that apply to the unjust enrichment claims, but have relied almost exclusively on citations to New York precedent. For purposes of this motion only, this Court will analyze this claim to determine whether it states a claim under New York law.

In order to prevail on a claim of unjust enrichment in New York, the plaintiff must establish three elements: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted).  Recovery under the theory of unjust enrichment is available, however, only in the absence of an enforceable agreement.  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987).[1]

---

[1] California and Colorado also refuse to apply the unjust enrichment doctrine when the conduct at issue arises from a breach of contract.  See, e.g., Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1420 (Ct. App. 2d Dist. 1996) ("When parties have an actual contract covering a

Plaintiffs allege two distinct forms of unjust enrichment by defendants.  First, defendants unjustly profited by failing to pay royalties at the rate set forth in the contractual arrangement.  Second, in failing to provide services that members of the class purchased without entering into a contract, defendants were unjustly enriched in the amount of the revenue received for those services.

Plaintiffs' unjust enrichment claim as to unpaid royalties is dismissed.  The royalty rate is governed by written contracts, which plaintiffs seek to enforce in their breach-of-contract claim.  Accordingly, these royalties cannot be recovered under an unjust enrichment theory.

Plaintiffs' unjust enrichment claim as to the non-contractual publishing services, however, is adequately pled.  Unlike the claim regarding unpaid royalties, plaintiffs allege that there was no written contract setting forth the nature of the services for which they are seeking damages in their unjust enrichment claim.  Accordingly, the motion to dismiss the unjust enrichment claim is granted in part.

---

subject, a court cannot -- not even under the guise of equity jurisprudence -- substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract."); <u>Bedard v. Martin</u>, 100 P.3d 584, 592 (Colo. Ct. App. 2004) ("This written contract covers the same subject matter as Bedard's unjust enrichment claim and thus precludes any implied-in-law contract.  Therefore, an action for unjust enrichment will not lie.").

III. Counts Three-Six: California Claims

Author Solutions moves to dismiss the four claims premised on violations of California's Unfair Competition Law ("UCL") and Fair Advertising Law ("FAL").  These claims assert, <u>inter alia</u>, that Author Solutions made false statements to induce authors to purchase "Publishing Packages and Services," falsely claimed that its services would create books "primed for retail success," and made false promises regarding the quality of its services.

The UCL is a broad statute that prohibits business practices that constitute "unfair competition," which is defined in the alternative as an unlawful, unfair, or fraudulent act, as well as an act of false advertising.  The UCL bans

> any unlawful, unfair or fraudulent business act or
> practice and unfair, deceptive, untrue or misleading
> advertising and any act prohibited by Chapter 1
> (commencing with Section 17500) of Part 3 of Division
> 7 of the Business and Professions Code.

<u>Cal. Bus. & Prof. Code</u> § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1127 (9th Cir. 2009).

The FAL, in turn, provides in relevant part:

> It is unlawful for any person, . . . corporation
> . . ., or any employee thereof with intent directly or
> indirectly to dispose of real or personal property or
> to perform services . . . or to induce the public to
> enter into any obligation relating thereto, to make or

16

disseminate . . . before the public in this state,
. . . in any newspaper or other publication . . . or
in any other manner or means whatever . . . any
statement, concerning that real or personal property
or those services . . . which is untrue or misleading,
and which is known, or which by the exercise of
reasonable care should be known, to be untrue or
misleading.

Cal. Bus. & Prof. Code § 17500.

The SAC includes all four claims set forth above: an FAL claim and three UCL claims, one for each prong of the statute -- that is, it asserts that Author Solutions engaged in actions that were "unlawful," "unfair," and "fraudulent."  All four claims are adequately pled.

Author Solutions argues that Foster has no standing to bring any claim premised on the purchase of the Marketing Package since she received a refund of the purchase price for that service.  The Marketing Package was only one of three services that Foster purchased.  None of the four California claims is premised solely on the purchase of the Marketing Package.  Therefore, Foster has standing to bring each of these statutory claims.

Author Solutions next contends that the SAC fails to plead Foster's statutory claims with the particularity required by Rule 9(b).  See Kearns, 567 F.3d at 1124-25 (stating that Rule 9(b) applies to FAL and UCL claims).  The SAC satisfies the

heightened pleading requirements for fraud claims.  To give one example, the SAC quotes from the Editorial Evaluation and its opinion that Foster's manuscript might receive a special designation if Foster purchased additional services and completed tasks satisfactorily.  The SAC asserts that the representations that an "editorial board" had formed an "opinion" about the quality of Foster's manuscript was false, and explains its reasons for so concluding.

Author Solutions also asserts that Foster's FAL claim (Count Three) must be dismissed because so many of the statements recited in the SAC are mere puffery.  California courts appear to recognize the "puffery" exception to FAL liability.  See, e.g., Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1361 (Ct. App. 2d Dist. 2003).  A statement is considered "puffery" if it is "merely a statement of opinion," Hauter v. Zogarts, 534 P.2d 377, 381 (Cal. 1975), or "extremely unlikely to induce consumer reliance" due to its generality.  Newcal Industries, Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008).

The FAL claim cannot be dismissed at this stage of the litigation on the ground that it relies on statements that are mere puffery.  Among other things, this count asserts that Author Solutions falsely represented that publishing and

18

marketing services for its authors would be provided by professionals.  This allegation is one on which a consumer of services is likely to rely and which can be tested with objective evidence.

Having determined that the FAL claim survives the present motion, the related UCL claims based on "unlawful" business practices (Count Four) and "fraudulent" business practices (Count Six) also survive.  "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co., 973 P.2d 527, 539-40 (Cal. 1999) (citation omitted).  Accordingly, "any violation of the false advertising law necessarily violates the UCL."  Kasky v. Nike, Inc., 45 P.3d 243, 250 (Cal. 2002) (citation omitted).  Additionally, "[f]alse advertising is included in the 'fraudulent' category of prohibited practices." Zhang v. Superior Court, 304 P.3d 163, 167 (Cal. 2013).  Thus, the motion to dismiss the UCL "unlawful" and "fraudulent" claims pleaded in Counts Four and Six is denied.

Finally, Author Solutions contends that the California statutory claim under the UCL in Count Five, which asserts that Author Solutions violated the UCL by engaging in an "unfair"

19

business practice, must be dismissed because the SAC does not adequately allege that Author Solutions engaged in "immoral" conduct.  In making this argument, Author Solutions relies on California appellate court law stating that "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886-87 (Ct. App. 4th Dist. 1999) (citation omitted).

California's highest court has held, in the context of commercial claims of unfairness brought by one business against its direct competitor, that the alleged unfairness must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  Cel-Tech, 973 P.2d at 544.  California courts have not yet decided whether this restrictive definition of unfairness will apply when a consumer brings a claim under the UCL for alleged unfairness.  See Lozano v. AT&T Wireless Servs. Inc., 504 F.3d 718, 735 (9th Cir. 2007) (summarizing the disagreement among California's appellate courts); Zhang, 304 P.3d at 174 & n.9 (noting that these disagreements have not yet been resolved by the California Supreme Court).  Prior to Cel-Tech, California courts applied a balancing test, "balancing the harm to the consumer against the

20

utility of the defendant's practice." Lozano, 504 F.3d at 735
(citing South Bay, 72 Cal. App. 4th at 861).

Under either test, the SAC pleads a violation of the
"unfairness" prong of the UCL.  By alleging that Author
Solutions is in essence a scam, the SAC has described conduct
that would impact competition, have no lawful utility, and would
harm consumers.  Thus, the motion to dismiss Count Five is
denied.


IV. Count Seven: New York GBL § 349

Author Solutions moves to dismiss James's claim that
defendants "engaged in deceptive acts and practices that affect
consumers at large," and thereby violated New York General
Business Law ("GBL") § 349.  Section 349 of the GBL declares
unlawful "[d]eceptive acts or practices in the conduct of any
business, trade or commerce or in the furnishing of any service
in [New York] [S]tate." N.Y. Gen. Bus. L. § 349.

"To maintain a cause of action under § 349, a plaintiff
must show: (1) that the defendant's conduct is consumer-
oriented; (2) that the defendant is engaged in a deceptive act
or practice; and (3) that the plaintiff was injured by this
practice." Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54,
64 (2d Cir. 2010) (citation omitted).

> Additionally, because § 349 extends well beyond
> common-law fraud to cover a broad range of deceptive
> practices, . . . and because a private action under
> § 349 does not require proof of the same essential
> elements (such as reliance) as common-law fraud, an
> action under § 349 is not subject to the pleading-
> with-particularity requirements of Rule 9(b),
> Fed.R.Civ.P., but need only meet the bare-bones
> notice-pleading requirements of Rule 8(a),
> Fed.R.Civ.P.

Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d

Cir. 2005) (citation omitted).

The first element of this claim is of greatest import.  See

City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 455

(2d Cir. 2008) ("The gravamen of a § 349 claim is consumer

injury or harm to the public interest." (citation omitted)),

rev'd and remanded on other grounds by Hemi Grp., LLC, v. City

of New York, 559 U.S. 1 (2010).  Although nothing in the text of

§ 349 itself limits the provision to conduct directed at

consumers, the New York Court of Appeals inferred from the

statute's structure and legislative history that § 349 was so

limited.  Oswego Laborers' Local 214 Pension Fund v. Marine

Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995).

Notwithstanding this limitation, Oswego defined the scope of

consumer-oriented conduct broadly, holding that, in order to

meet this requirement, a plaintiff must "demonstrate that the

acts or practices have a broader impact on consumers at large.

22

Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute." Id. (citing the rental of Shea Stadium in Genesco Entertainment v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)); see also City of New York v. Smokes-Spirits.com, Inc., 911 N.E.2d 834, 839-40 (N.Y. 2009) (describing this as "the rule, recognized in Oswego"). Accordingly, the New York Court of Appeals has rejected a § 349 claim arising out of a complex, personalized insurance contract negotiated by sophisticated parties, New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 770-71 (N.Y. 1995), but has accepted a § 349 claim challenging an "extensive marketing scheme" in connection with the sale of insurance policies because it had "a broader impact on consumers at large." Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E.2d 598, 603 (N.Y. 1999) (citation omitted).

As to the second element, "[d]eceptive practices are acts which are dishonest or misleading in a material respect. Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

Under the ordinary notice-pleading standard of Rule 8(a), Fed.R.Civ.P., the SAC adequately pleads the elements required

for a claim under GBL § 349.  It is alleged that Author
Solutions misrepresented the nature of its services, both
generally as a publisher that provided basic editorial services
and specifically with regard to certain packages of services.
As alleged, these representations were likely to mislead a
reasonable individual into purchasing those services.  This
deceptive act is "consumer-oriented" because Author Solutions
engages in an extensive marketing scheme that has impacted many
would-be authors.  Finally, James was injured when he paid for
services that he did not receive.

Defendants' arguments in support of the motion to dismiss
the GBL § 349 claim are not persuasive.  First, defendants
contend that James failed to identify with specificity the
misstatements that caused him to be deceived.  The heightened
pleading requirements do not apply to a claim under GBL § 349,
and thus James is not required to identify particular
misstatements.

Second, defendants argue that James's allegations based on
the statements by Author Solutions about the quality and speed
of its publishing services are not a proper basis for his claim
because the statements are mere puffery.  The doctrine declaring
puffery non-actionable is generally reserved for "[s]ubjective
claims about products, which cannot be proven either true or

24

false." Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) (citation omitted).

Assuming that the puffery doctrine applies to a GBL § 349 claim,[2] James has identified several representations by Author Solutions that were not subjective.  For example, James alleges that, because Author Solutions represented itself as a publisher that assists authors in publishing their manuscripts, it promised a base level of quality and speed consistent with such a publisher.

Third, defendants dispute that Author Solutions' conduct is "consumer-oriented."  Defendants argue that the authors are not "consumers," but were engaged in the business of publishing their own work.  They rely principally on Tasini v. AOL, Inc., 851 F. Supp. 2d 734 (S.D.N.Y. 2012), in which blogging contributors to The Huffington Post were held not to be "consumers" under GBL § 349.  Id. at 742-43.

In Karlin v. IVF America, Inc., 712 N.E.2d 662 (N.Y. 1999), New York's highest court endorsed a broad reading of the GBL § 349 that would allow James's claim to proceed.  It stated that GBL § 349 "on [its] face appl[ies] to virtually all economic

---

[2] The only New York authority cited by defendants, Lacoff v. Buena Vista Pub., Inc., 705 N.Y.S. 2d 183, 191 (Sup. Ct. 2000), is a First Amendment commercial speech case.  Moreover, the case cited therein, Bader v. Siegel, 657 N.Y.S. 2d 28, 29 (App. Div. 1st Dept. 1997), states that puffery is non-actionable under common law fraud.

activity[] and [its] application has been correspondingly broad."  Id. at 665.  It also cited approvingly a Fourth Department decision in which a GBL § 349 claim had been brought against an editing company that had "organized and directed a fraudulent and deceptive scheme to induce authors seeking to publish their manuscripts to submit them to [the company] for editing."  People ex rel. Vacco v. Appel, 685 N.Y.S.2d 504 (App. Div. 4th Dep't 1999).  The motion to dismiss is denied as to Count Seven.


## V. Count Eight: Colorado Claim under CCPA § 6-1-105(1)(u)

Finally, Author Solutions moves to dismiss Simmons's claim under Colorado law, which alleges that defendants engaged in deceptive acts and practices in violation of the Colorado Consumer Protection Act ("CCPA").  The pertinent statute reads:

> A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . [f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

Colo. Rev. Stat. § 6-1-105(1)(u).  Simmons claims that defendants "knowingly made false representations as to the characteristics and benefits of their editorial and marketing

services, and their royalties' payments structure," and "[i]n so doing" "failed to disclose material information known at the time of their sale of those services with the intent to induce the sale."

To prove a private cause of action under the CCPA, a plaintiff must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

Rhino Linings United States v. Rocky Mt. Rhino Lining, 62 P.3d 142, 146-147 (Colo. 2003) (citation omitted).  The heightened pleading requirements of Rule 9(b), Fed.R.Civ.P., apply to all CCPA claims.  See HealthONE of Denver, Inc. v. UnitedHealth Group Inc., 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011) (collecting cases).

Only the first part of the five-part test is at issue here. The list of unfair and deceptive trade practices is codified in Colo. Rev. Stat. § 6-1-105.  Where, as here, the alleged deceptive practice is a material omission under § 6-1-105(1)(u), the plaintiff must plead the following to make a prima facie

27

claim:

> (1) that the defendant failed to disclose information
> concerning goods, services or property to consumers;
> (2) that the defendant knew this information at the
> time of the advertisement or sale of the goods,
> services or property; (3) that the non-disclosed
> information was material; and (4) that the defendant
> did not disclose this information with the intent to
> induce the consumer to enter into a transaction.

Warner v. Ford Motor Co., No. 06-cv-2443 (JLK), 2008 WL 4452338,

at *10 (D. Colo. Sept. 30, 2008).

Simmons' Colorado claim is adequately pled.  The

allegations in the SAC satisfy all four elements of the claim.

Moreover, they are pled with sufficient particularity, for the

same reasons that Foster's allegations are so pled, as explained

above.

Author Solutions contends that Simmons fails to allege

knowledge and intent with particularity.  It states that Simmons

only pleads "knowledge in a conclusory fashion when aping the

legal standard."  The particularity requirement, however, does

not apply to knowledge or intent elements of a cause of action.

See Rule 9(b), Fed.R.Civ.P. ("Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally.").

The SAC need only raise a strong inference of knowledge or

intent, which it does here.  It alleges that Author Solutions

was aware of numerous complaints by authors that it routinely

28

failed to provide its promised services.  Moreover, the central thesis of the SAC is that Author Solutions is a fraudulent scheme designed specifically to induce individuals to purchase its "bogus" services, thus raising a strong inference of fraudulent intent.

Author Solutions further argues that Simmons' pleading is inadequate because she does not specifically allege omissions on the part of the defendants.  The SAC adequately alleges material misrepresentations and then generally asserts that, by making such statements, Author Solutions made material omissions.  This is sufficient to give Author Solutions adequate notice of the theory of omission underlying the CCPA claim.

Finally, Author Solutions contends that an omission is only actionable when there is a duty to disclose, citing Francis v. Mead Johnson & Co., No. 10-cv-701 (JLK), 2010 WL 5313540 (D. Colo. Dec. 17, 2010).  Francis recognized that, "[g]enerally, a defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that in equity or good conscience should be disclosed."  Id. at *5 (citation omitted).  That standard is met here.

CONCLUSION

Defendants' November 1, 2013 motion to dismiss is granted in part.  Defendant Penguin is dismissed from this action.  The unjust enrichment claim based on unpaid royalties is also dismissed.  The remainder of the motion to dismiss is denied.


SO ORDERED:

Dated:    New York, New York
          April 11, 2014

_____
              DENISE COTE
        United States District Judge